UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| R&R PROPANE, LLC, | ) |
|     Plaintiff, | ) ) |
| v. | ) Case No. 4:23-cv-01281-SEP |
| TIGER PAYMENT SOLUTIONS, LLC, & FIRST DATA MERCHANT SERVICES, LLC, | ) ) ) ) ) |
|     Defendants. | ) ) |

**MEMORANDUM AND ORDER**

Before the Court are Defendants' motions to dismiss, Docs [23], [25]. The motions are fully briefed and ready for disposition. *See* Docs. [24], [26], [31], [32], [33], [39]. For the reasons set forth below, the motions are granted.

**FACTS AND BACKGROUND**[1]

Plaintiff R&R Propane is a small propane business in Jefferson County, Missouri. *See* Doc. [15] ¶ 5. Like many businesses, Plaintiff accepts credit cards, and it uses other companies to process credit card payments. *Id*. ¶ 8. Defendant Tiger Payment Solutions is an Independent Service Organization (ISO) that "solicits merchants to offer them credit and debit card processing on behalf of processors and banks." Doc. [26-1] ¶ 9. Defendant First Data Merchant Services is one such processor. *Id*. Plaintiff alleges that, on November 3, 2020, it entered into a contract with Defendants. Doc. [15] ¶ 7. Plaintiff does not name the contract in the Third Amended Complaint, but the date and alleged parties correspond with the Merchant Processing Application and Agreement (MPAA), attached to First Data's Motion to Dismiss. *See* Doc. [24-1].[2] Defendants "were to process business accounts and credit card transactions for R&R

---

[1] The Court assumes that the factual allegations in the Third Amended Complaint are true. *See Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

[2] "Though matters outside the pleading may not be considered in deciding a Rule 12 motion to dismiss, documents necessarily embraced by the complaint are not matters outside the pleading." *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) (quoting *Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004)). "Documents necessarily embraced by the pleadings include 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading.'" *Id*. (quoting *Kushner v. Beverly Enters., Inc.*, 317

and had access to R&R's bank account" in order to do so.  Doc. [15] ¶ 8.  Mr. James Rowden was Plaintiff's authorized representative under the contract and the only person "authorized to act on behalf of R&R with Defendants."  *Id*. ¶¶ 9-10.  In February 2023—over two years after the parties allegedly executed the contract—an "unauthorized person" "contacted Defendants seeking to change the bank with which R&R was doing business."  *Id*. ¶ 12.  Plaintiff alleges that the unauthorized person used "the name and counterfeited identification of . . . someone other than Rowden," and "supplied obviously false letterhead communications from PNC Bank and Chase Bank."  *Id*. ¶¶ 13-14.  Defendants "never contacted Rowden to determine the legitimacy of the documents supplied by the Unauthorized Persons or the authority of the person other than Rowden to authorize changes in the bank for R&R," causing damage "in the amount of $363,296.17 plus interest and costs."  *Id*. ¶ 16.

Plaintiff now sues Defendants for negligence and breach of fiduciary duty.  *Id*. ¶¶ 17-23.  After Plaintiff filed the Third Amended Complaint, Defendants each moved to dismiss.  First Data argues that the case should be dismissed for failure to state a claim.  Tiger agrees that Plaintiff fails to state a claim and also argues that the Court lacks personal jurisdiction over it.[3]

## LEGAL STANDARD

### *Personal Jurisdiction*

When a defendant challenges personal jurisdiction, the plaintiff "must make a prima facie showing of personal jurisdiction over the challenging defendant."  *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014).  That showing is made "by pleading sufficient facts 'to support a reasonable inference that the defendant[ ] can be subjected to jurisdiction

---

F.3d 820, 831 (8th Cir. 2003)).  Each of the three complaints states that the contract is "attached hereto as Exhibit A," but it is attached to none.  *See* Docs. [1], [6], [15].  In its response to Defendants' motions to dismiss, Plaintiff acknowledges the "Application attached to the Complaint consisted only of seven (7) pages found attached to the initial complaint and Document 24-1 ("24-1")."  The Court takes that statement to mean that the first seven pages of the MPAA filed at Doc. [24-1] is what Plaintiff intended to attach to the complaints.  Accordingly, that portion of the MPAA is necessarily embraced by the pleadings and may be considered when ruling on the motions to dismiss.

[3] In the alternative, Defendants request that the Court transfer the case to the Eastern District of New York pursuant to the MPAA forum selection clause.  Plaintiff opposes transfer.  Because the Court dismisses the action against both Tiger and First Data, the Court need not address the enforceability and applicability of the MPAA forum selection clause.  *See Rabinowitz v. Kelman*, 75 F.4th 73, 79 (2d Cir. 2023) ("As the Supreme Court has observed, the notion that forum selection clauses 'tend to "oust" a court of jurisdiction is hardly more than a vestigial legal fiction.'" (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12 (1972))).

within the state.'" *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591-92 (8th Cir. 2011) (alteration in original) (quoting *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004)).  "A plaintiff's prima facie showing 'must be tested, not by the pleadings alone, but by affidavits and exhibits supporting or opposing the motion.'" *Fastpath*, 760 F.3d at 820 (quoting *K-V Pharm.*, 648 F.3d at 592).  The "party seeking to establish the court's personal jurisdiction carries the burden of proof," but the Court "must view the evidence in a light most favorable to the plaintiff and resolve factual conflicts in the plaintiff's favor." *Id*.

### *Failure to State a Claim*

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  The notice pleading standard of Federal Rule of Civil Procedure 8(a)(2) requires a plaintiff to give "a short and plain statement of the claim showing that the pleader is entitled to relief."  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Determining if well-pled factual allegations state a "plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  A plaintiff's allegations must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678).  The well-pled facts must establish more than a "mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

When ruling on a motion to dismiss, a court "must liberally construe a complaint in favor of the plaintiff," *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010), and "grant all reasonable inferences in favor of the nonmoving party," *Lustgraaf v. Behrens*, 619 F.3d 867, 872-73 (8th Cir. 2010) (citing *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 591 (8th Cir. 2009)).  But if a claim fails to allege one of the elements necessary to recovery on a legal theory, the Court must dismiss that claim for failure to state a claim upon which relief can be granted.  *See Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011).

3

**DISCUSSION**

Plaintiff has not shown that the Court has personal jurisdiction over Tiger, and the Third Amended Complaint does not state a claim upon which relief can be granted.  Accordingly, the claims against both Defendants are dismissed.

**I.      Plaintiff has not shown that the Court has personal jurisdiction over Tiger.**

A federal district court's exercise of personal jurisdiction must be "consistent with both the law of the forum state and due process." *Pederson v. Frost*, 951 F.3d 977, 979 (8th Cir. 2020).  The two inquiries are separate, *Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.*, 702 F.3d 472, 475 (8th Cir. 2012), but the "Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 571 U.S. 277, 283 (2014).  So, if an assertion of jurisdiction would not comply with the Due Process Clause, it does not matter whether it is consistent with the state's long-arm statute.  Asserting personal jurisdiction over Tiger in this case would be inconsistent with the Due Process Clause.  Therefore, the Court need not assess its consistency with Missouri's long-arm statute.

"Personal jurisdiction can be specific or general." *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 593 (8th Cir. 2011).  "A court may assert general jurisdiction over foreign corporations only if they have developed 'continuous and systematic general business contacts,' with the forum state, 'so as to render them essentially at home in the forum State.'" *Id*. at 595 (cleaned up) (first quoting *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 416 (1984); then quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  Plaintiff does not argue—and there is insufficient evidence in the record to find—that the Court can assert general jurisdiction over Tiger.

"A court has specific jurisdiction over an out-of-state defendant when the defendant purposely directed its 'activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Kendall Hunt Publ'g Co. v. Learning Tree Publ'g Corp.*, 74 F.4th 928, 930 (8th Cir. 2023) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).  The Eighth Circuit has established a five-factor test for assessing a defendant's contacts with the forum state:  "(1) the nature and quality of [the defendant's] contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents;

4

and (5) convenience of the parties." *Id*. (quoting *Bros. & Sisters in Christ, LLC v. Zazzle, Inc.*, 42 F.4th 948, 952 (8th Cir. 2022)).  The first three factors are the most important.  *Id*.  None of the three favors personal jurisdiction in this case.

      Tiger's contacts with Missouri appear to be minimal in both quality and quantity.  In the Third Amended Complaint, Plaintiff alleges that Tiger does business in the state of Missouri and entered into a contract with Plaintiff, a Missouri company.  Beyond those allegations, Plaintiff has submitted nothing to support the Court's exercise of personal jurisdiction over Tiger.  In support of its Motion to Dismiss, Tiger submitted a sworn declaration from Mr. Robert Fawcett, Tiger's managing member.  *See* Doc. [26-1].  Fawcett states that Tiger is a Massachusetts company; Tiger has no property, offices, employees, agents, or representatives in Missouri; and Tiger is not registered to do business with the Missouri Secretary of State.  *Id*. ¶¶ 2-8.  Fawcett explains that Tiger is an ISO that "solicits merchants to offer them credit and debit card processing on behalf of processors and banks." *Id.* ¶ 9.  A "non-Missouri resident software partner" referred Plaintiff to Tiger by email, and Tiger "corresponded with Mr. Rowden by email and communicated by telephone to solicit R&R Propane for card processing services provided by First Data." *Id*. ¶ 10.  First Data, not Tiger, provides the card-processing services to Plaintiff, and Tiger "receives residuals (ongoing financial compensation) from First Data as a result of its efforts in referring new business to First Data." *Id*. ¶¶ 10-11.  Tiger's ongoing connection with Plaintiff is limited to "ordinary customer support to its referred merchants who enter into a contractual relationship with First Data," and any "communications between Tiger and Plaintiff would have been by telephone, facsimile, electronic mail, and/or U.S. mail or through in-person meetings conducted outside the state of Missouri." *Id*. ¶ 12.

      Plaintiff provides argument, but no evidence, to counter Fawcett's declaration.  It argues that Tiger "actively solicited business from a party in the forum state, engages [sic] in negotiations with that party, and then formed and maintained a contractual relationship with that party." Doc. [31] at 9.  If that were true, Plaintiff would have a better case for personal jurisdiction.  But there is no evidence that Tiger "maintained a contractual relationship" with a party in Missouri.[4]  *Id*.  The MPAA appears to be between Plaintiff, First Data, and Wells Fargo.

---

[4] In its opposition brief, Plaintiff acknowledges that "there is no enforceable written agreement in place binding R&R," Doc. [31] at 7, apparently contradicting the Third Amended Complaint's allegation that "R&R entered into a contract . . . with the Defendants," Doc. [15] ¶ 7.  Because the MPAA itself and

5

*See* Doc. [24-1] at 7, 8. Tiger is named once in the MPAA as the "Sales Office." *Id*. at 2. Plaintiff has not shown that Tiger signed the contract, and there is no obvious place for it to do so. The MPAA assigns Tiger no responsibilities. Tiger's role in payment processing is limited to "solicit[ing] merchants to offer them credit and debit card processing on behalf of processors and banks" and "provid[ing] ordinary customer support to its referred merchants." Doc. [26-1] ¶¶ 9, 12. Tiger is compensated for its "efforts in referring new business to First Data" *by First Data*, not Plaintiff. *Id*. ¶ 11. On the record before the Court, the nature, quality, and quantity of Tiger's contacts with Missouri—factors one and two—do not support exercising personal jurisdiction over Tiger.

The third factor is whether "the litigation results from alleged injuries that arise out of or relate to" Tiger's contacts with Missouri. *Kendall Hunt Publ'g*, 74 F.4th at 930 (quoting *Burger King*, 471 U.S. at 472). Plaintiff vaguely alleges that "Defendants" were negligent in their failure to "determine the legitimacy of the documents supplied by the Unauthorized Persons or the authority of the person other than Rowden to authorize changes in the bank for R&R." Doc. [15] ¶ 3. As discussed in Section II.C.1, below, any obligation "Defendants" had to determine the legitimacy of those documents would have come from the MPAA, a contract to which Tiger is not a party. Tiger's Missouri-based contacts include soliciting Plaintiff's business for First Data and providing customer service. Plaintiff's claims relate to the actual payment processing—i.e., sending money to the wrong settlement account—and Plaintiff has not shown that Tiger was involved in that activity. A claim relating to statements Tiger made when it solicited Plaintiff's business for First Data might "arise out of or relate to" Tiger's contacts with Missouri. *Burger King*, 471 U.S. at 472. But there is nothing more than a conclusory allegation to suggest that Tiger was involved in the activity that gave rise to this suit.

Because the first and second factors also militate against personal jurisdiction, Plaintiff's failure to prevail on the third factor forecloses it. *See Pederson*, 951 F.3d at 981 n.4 ("[T]he last two factors—the forum state's interest and the convenience of the parties—cannot themselves

---

Fawcett's declaration belie Plaintiff's allegation that Tiger entered into a contract with R&R, the Court need not accept that allegation as true. *See Lammert v. Nat'l Sur. Corp.*, 2019 WL 698121, at *1 (E.D. Mo. Feb. 20, 2019) (courts need not accept as true "facts which appear by a record or document included in the pleadings to be unfounded" (quoting *Cohen v. United States*, 129 F.2d 733, 736 (8th Cir. 1942))). Consideration of the motions to dismiss does not require further determination of the MPAA's enforceability.

create personal jurisdiction." (citing *Burger King*, 471 U.S. at 476; *Fastpath*, 760 F.3d at 824)). Viewing the evidence in the light most favorable to Plaintiff and drawing all reasonable inferences in its favor, Plaintiff has failed to "plead[ ] sufficient facts 'to support a reasonable inference that [Tiger] can be subjected to jurisdiction within the state.'" *Bros. & Sisters in Christ*, 42 F.4th at 951 (quoting *K-V Pharm.*, 648 F.3d at 591-92).

Section 1406(a) of Title 28 of the United States Code provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *See Eggleton v. Plasser & Theurer Export Von Bahnbaumaschinen Gesellschaft, MBH*, 495 F.3d 582, 584 ("§ 1406(a) grants district court the power to transfer cases for lack of personal jurisdiction, as well as for improper venue" (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962))). It is not in the interest of justice to transfer this case. Plaintiff has not requested a transfer, and as explained below, Plaintiff fails to state a claim against either Defendant under Federal Rule of Civil Procedure 12(b)(6). Plaintiff's claims against Tiger are therefore dismissed.

**II.     The Third Amended Complaint does not state a claim.**

Plaintiff brings two causes of action against Defendants: negligence and breach of fiduciary duty. Neither states a claim upon which relief can be granted.

### A. The Court need not engage in a choice-of-law analysis because Missouri and New York law are not in conflict.

The parties disagree about whether Missouri or New York law should apply to Plaintiff's claims. The MPAA provides that it "shall be governed by and construed in accordance with the laws of the State of New York (without regard to its choice of law provisions)." *See* Doc. [24-1] at 46. "The district court must apply the choice-of-law rules of the forum state." *Interstate Cleaning Corp. v. Com. Underwriters Ins. Co.*, 325 F.3d 1024, 1028 (8th Cir. 2003). And "[u]nder Missouri law, a conflict of laws does not exist 'unless the interests of the two states cannot be reconciled.'" *Id.*; *see also Phillips v. Marist Soc. of Washington Province*, 80 F.3d 274, 276 (8th Cir. 1996) ("We agree with the statement of Judge Richard A. Posner that 'before entangling itself in messy issues of conflict of laws a court ought to satisfy itself that there actually is a difference between the relevant laws of the different states.'" (quoting *Barron v.*

*Ford Motor Co. of Canada, Ltd.*, 965 F.2d 195, 197 (7th Cir. 1992))). On the issues before the Court, no conflict of laws exists between Missouri and New York.

New York and Missouri apply the same elements for a breach of fiduciary duty claim. *Compare Robinson v. Langenbach*, 599 S.W.3d 167, 178 (Mo. 2020) ("When breach of fiduciary duty is asserted as a tort claim, as here, the proponent must establish that a fiduciary duty existed between it and the defending party, that the defending party breached the duty, and that the breach caused the proponent to suffer harm." (quoting *W. Blue Print Co. v. Roberts*, 367 S.W.3d 7, 15 (Mo. 2012))), *with Blanton v. Educ. Affiliates, Inc.*, 2022 WL 1505124, *4 (2d Cir. May 12, 2022) ("To establish a breach of fiduciary duty claim under New York law, [Plaintiff] must prove: '(i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom.'" (quoting *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 138 (2d. Cir. 2011))); *see also Sun Aviation, Inc. v. L-3 Commc'ns Avionics Sys., Inc.*, 533 S.W.3d 720, 727 (Mo. 2017) (en banc) (defining a fiduciary relationship as a "relation of trust and confidence" (quoting *Andes v. Albano*, 853 S.W.2d 936, 943 (Mo. 1993))); *Oddo Asset Management v. Barclays Bank PLC*, 973 N.E.2d 735, 740 (N.Y. 2012) (defining a fiduciary relationship as one "grounded in a higher level of trust than normally present in the marketplace between those involved in arm's length business transactions." (quoting *EBC I, Inc. v. Goldman, Sachs & Co.*, 832 N.E.2d 26, 31 (N.Y. 2005))).

The two states also require the same elements for a negligence claim. *Compare Wieland v. Owner-Operator Servs., Inc.*, 540 S.W.3d 845, 848 (Mo. 2018) (en banc) ("In any action for negligence, a plaintiff must establish the defendant owed a duty of care to the plaintiff, the defendant breached that duty, and the defendant's breach proximately caused the plaintiff's injury."), *with Ferreira v. City of Binghamton*, 194 N.E.3d 239, 245 (N.Y. 2022) ("In any common-law negligence case brought pursuant to New York law, 'a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom[.]'" (quoting *Soloman v. City of New York*, 489 N.E.2d. 1294, 1294 (N.Y. 1985))).

And both states apply the economic loss doctrine to negligence claims. *Compare Graham Const. Servs. v. Hammer & Steel Inc.*, 755 F.3d 611, 616 (8th Cir. 2014) ("Under Missouri law, '[r]ecovery in tort for pure economic damages [is] limited to cases where there is personal injury, damage to property other than that sold, or destruction of the property sold due

to some violent occurrence.'" (quoting *Captiva Lake Invs., LLC v. Ameristructure, Inc.*, 436 S.W.3d 619, 628 (Mo. Ct. App. 2014))), *with Am. Tel. & Tel. Co. v. N.Y.C. Hum. Res. Admin*, 833 F. Supp. 962, 982 (S.D.N.Y. 1993) ("The general rule under New York law is that economic loss is not recoverable under a theory of negligence or strict products liability."), *and Negrete v. Citibank, N.A.*, 187 F. Supp. 3d 454, 472 (S.D.N.Y. 2016) ("The purpose of this economic loss rule is to 'keep contract law from drowning in a sea of tort and with this goal in mind New York courts restrict plaintiffs who have suffered economic loss, but not personal or property injury, to an action for the benefits of their bargains.'" (quoting *Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*, 244 F.R.D. 204, 220 (S.D.N.Y. 2007))). While Missouri recognizes some exceptions to the economic loss doctrine, those exceptions are not applicable to this case. *See infra* Section II.C.2.

Thus, "[New York's] law interests and Missouri's law interests can be reconciled, [and the court] need not engage in a conflict of law analysis." *Interstate Cleaning Corp.*, 325 F.3d at 1028. Because no conflict exists, the Court applies Missouri law. *See id.* Sitting in diversity jurisdiction, the Court "look[s] to the decisions of the state supreme court." *Perras v. H & R Block*, 789 F.3d 914, 917 (8th Cir. 2015) (citing *Ashley Cnty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009)). "If the Supreme Court of Missouri has not decided the issue, [the Court] look[s] to analogous state-court decisions and precedent to predict how that Court would decide the issue." *Id*.

### B. Plaintiff's fiduciary duty claim fails because it has not pled facts that show a fiduciary relationship.

"When breach of fiduciary duty is asserted as a tort claim, as here, the proponent must establish that a fiduciary duty existed between it and the defending party, that the defending party breached the duty, and that the breach caused the proponent to suffer harm." *Robinson*, 599 S.W.3d at 178) (quoting *W. Blue Print Co*, 367 S.W.3d at 15); *see also Robert T. McLean Irrevocable Tr. v. Patrick Davis, P.C.*, 283 S.W.3d 786, 792-93 (Mo. Ct. App. 2009) ("An adequately pleaded claim for breach of fiduciary duty consists of the following elements: '1) the existence of a fiduciary relationship between the parties, 2) a breach of that fiduciary duty, 3) causation, and 4) harm.'" (quoting *Koger v. Hartford Life Ins. Co.*, 28 S.W.3d 405, 411 (Mo. Ct. App. 2000))). "Whether a fiduciary duty exists is a question of law, while the breach of that duty is for the trier of fact to decide." *W. Blue Print*, 367 S.W.3d at 15.

9

Count II of the Third Amended Complaint is nothing more than a "[t]hreadbare recital[ ] of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Rule 8 does not empower [a plaintiff] to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss." *Id*. at 687. Plaintiff alleges that "Defendants owed a fiduciary duty to R&R," Doc. [15] ¶ 21, without pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 687. The allegations from the "Statement of Facts," which Plaintiff incorporates by reference, are insufficient. *See* Doc. [15] ¶ 20. Plaintiff alleges that (1) R&R is a propane business, (2) it entered into a contract with Defendants to process business accounts and credit card transactions, and (3) after an unauthorized person contacted Defendants to change the R&R's bank information, Defendants did not contact R&R's authorized representative, Rowden, to "determine the legitimacy of the documents supplied by the Unauthorized Persons or the authority of the person other than Rowden to authorize changes in the bank for R&R." *Id*. ¶¶ 6-15. Nothing in the Third Amended Complaint suggests that Plaintiff and Defendants had the kind of special "relation of trust and confidence" that creates a fiduciary duty. *Sun Aviation*, 533 S.W.3d at 727 (quoting *Andes*, 853 S.W.2d at 943). Plaintiff do not cite—and the Court has not found—any Missouri cases suggesting that a merchant's relationship with an ISO (Tiger) or payment processor (First Data) creates fiduciary duties.[5] The "mere 'existence of a business relationship does not give rise to a fiduciary relationship, nor [to] a presumption of such a relationship.'" *Id*. at 728 (alteration in original) (quoting *Kratky v. Musil*, 969 S.W.2d 371, 377 (Mo. Ct. App. 1998)). Because "[p]arties may deal at arms length for mutual profit without subjecting themselves to heightened fiduciary duties," Count II is dismissed. *Id*. (quoting *Devery Implement Co. v. J.I. Case Co.*, 944 F.2d 724, 730 (10th Cir. 1991)).

---

[5] Plaintiff also did not cite any New York cases suggesting a fiduciary duty could arise from such a relationship. Defendants, on the other hand, cited a New York case where the court rejected a plaintiff's claim for breach of a fiduciary duty because the plaintiff failed to "plead any facts to demonstrate that the relationship between the parties was one of trust and confidence and not a straightforward business transaction *between a credit card processor and a merchant*." *Taylor Bldg. Mgmt., Inc. v. Glob. Payments Direct, Inc.*, 2008 WL 2067096, *7 (N.Y. Sup. Ct. Mar. 20, 2008) (emphasis added).

### C. Plaintiff's negligence claim is barred by the economic loss doctrine.

As noted in Section II.A, above, both Missouri and New York apply the economic loss doctrine, which "prohibits a plaintiff from seeking to recover in tort for economic losses that are contractual in nature." *Captiva Lake Invs., LLC*, 436 S.W.3d at 628. Plaintiff's negligence claim runs afoul of that doctrine.

#### *1. Plaintiff's negligence claim is contractual in nature.*

Like its breach of fiduciary duty claim, Plaintiff's negligence claim is "[t]hreadbare" and "supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. "In any action for negligence, a plaintiff must establish the defendant owed a duty of care to the plaintiff, the defendant breached that duty, and the defendant's breach proximately caused the plaintiff's injury." *Wieland*, 540 S.W.3d at 848 (Mo. 2018) (en banc). The Third Amended Complaint alleges that "[t]he failure of Defendants to ascertain the legitimacy of the actions of the Unauthorized Persons and to permit the Unauthorized Persons to withdraw funds owned by R&R was negligent." Doc. [15] ¶ 18. Plaintiff does not allege either that defendant owed it a duty or the source of such a duty. To the extent that a duty can be inferred from the Statement of Facts Plaintiff incorporates into the negligence claim, it is rooted in the MPAA, not the common law, and is therefore barred by the economic loss doctrine.

First Data argues that there is no "common law duty to 'determine the legitimacy' of bank documents or 'ascertain the legitimacy' of certain actions." Doc. [24] at 9. So, "any potential duty First Data may have owed to Plaintiff would necessarily have arisen out of the Merchant Agreement." *Id*. Plaintiff responds that "Defendants owed a duty to R&R not to permit the actions taken by the unknown parties to change its bank without notice to R&R and the consent of R&R thereby permitting the unknown parties to drain R&R's bank account." Doc. [31] at 14. Defendants have the better of the argument. Plaintiff has not shown that Defendants' alleged duty to "determine the legitimacy of the documents supplied by the Unauthorized Persons or the authority of the person other than Rowden to authorize changes in the bank for R&R" exists independent of the MPAA. Doc. [15] ¶ 15. On the contrary, Plaintiff's allegations depend on the MPAA's terms. Plaintiff alleges that its "authorized representative *under the Contract* was James Rowden" and "[n]o other person was authorized to act on behalf of R&R with Defendants other than Rowden." *Id*. ¶¶ 9-10 (emphasis added). So unless an exception applies, Plaintiff negligence claims are "contractual in nature" and barred by

11

the economic loss doctrine. *Graham Const. Servs. v. Hammer & Steel Inc.*, 755 F.3d 611, 616 (8th Cir. 2014) (quoting *Autry Morlan Chevrolet Cadillac, Inc. v. RJF Agencies, Inc.*, 332 S.W.3d 184, 192 (Mo. Ct. App. 2010)).

2. ***The exceptions to the economic loss doctrine do not apply to this case.***

As a general matter, "[r]ecovery in tort for pure economic damages [is] limited to cases where there is personal injury, damage to property other than that sold, or destruction of the property sold due to some violent occurrence." *Graham Const.*, 755 F.3d at 616 (quoting *Captiva Lake Invs., LLC*, 436 S.W.3d at 628). Plaintiff's claims do not fit into those categories. Missouri courts have recognized certain other exceptions to the economic loss doctrine, but Plaintiffs claims do not fall within any of those either. First, "the negligent failure to observe and perform any portion of [a fiduciary] duty gives rise to an action in tort as well as an action for breach of contract." *Emerson Elec. Co. v. Marsh & McLennan Cos.*, 362 S.W.3d 7, 12 n.4 (Mo. 2012) (alteration in original) (quoting *Autry Morlan*, 332 S.W.3d at 193). That exception does not apply because, as discussed above, Plaintiff failed to plead facts establishing that Defendants owed it a fiduciary duty.

Second, "Missouri recognizes tort liability in professional negligence cases involving only economic loss." *Child.'s Wish Found. Int'l, Inc. v. Mayer Hoffman McCann, P.C.*, 331 S.W.3d 648, 652 n.2 (Mo. 2011) (citing *Bus. Men's Assurance Co. of Am. v. Graham*, 891 S.W.2d 438, 453 (Mo. Ct. App. 1994)). Courts usually cite *Business Men's Assurance Company of America v. Graham* as the source of the "professional negligence" exception. 891 S.W.2d 438 (Mo. Ct. App. 1994) [hereinafter *BMA*]. There, a building owner, BMA, brought a negligence claim against the architectural firm that provided "professional services to BMA in connection with design and construction of the BMA Tower," and the firm argued that the economic loss doctrine barred the claim. *Id.* at 442, 453. The Missouri Court of Appeals explained that "a mere breach of contract does not provide a basis for tort liability," but a party may have a negligence claim "if the party sues for breach of a duty recognized by the law as arising from the relationship or status the parties have created by their agreement." *Id.* at 453. The court found that "[a]n architect, as a member of a learned and skilled profession, has a duty to exercise the ordinary and reasonable technical skill that is usually exercised by one in that profession." *Id.* The architectural firm's "common law duty to provide architectural services in a professional manner," existed independent of its contract with BMA. *Id.* at 454. The court distinguished two

12

cases involving "actions by homeowners against the builder for defects in the quality of the residence," because they did "not involve claims arising from a professional's common law duty of care." *Id*. (distinguishing *Crowder v. Vandendeale*, 564 S.W.2d 879 (Mo. 1978); *Clark v. Landelco, Inc.*, 657 S.W.2d 634 (Mo. Ct. App. 1983)).

Courts applying Missouri law have allowed negligence claims for negligence in rendering professional services. *See, e.g.*, *Child.'s Wish Found. Int'l*, 331 S.W.3d at 652 n.2 (accounting services); *Am. Mortg. Inv. Co. v. Hardin-Stockton Corp.*, 671 S.W.2d 283, 290 (Mo. Ct. App. 1984) (real estate brokerage services); *Westfield, LLC v. IPC, Inc.*, 816 F. Supp. 2d 745, 750 (E.D. Mo. 2011) (engineering services); *JR14, LLC v. Jetcorp Tech. Servs., Inc.*, 2017 WL 3720075, at *2 (E.D. Mo. Aug. 29, 2017) (airline inspection services); *Higher Educ. Loan Auth. of the State of Mo. v. Wells Fargo Bank, N.A.*, 2011 WL 6010683, at *7 (E.D. Mo. Dec. 2, 2011) ("indenture trustee/bond issuer relationship"); *Murphy v. Nw. Mut. Ins. Co.*, 2005 WL 1421789, at *3 (W.D. Mo. June 13, 2005) (insurance agent services). But they have not extended the common law duty that exists for professionals to all business relationships. *See, e.g.*, *Jacobson Warehouse Co. v. Schnuck Markets, Inc.*, 13 F.4th 659, 675 (8th Cir. 2021) (affirming judgment as a matter of law on plaintiff's claim for the negligent provision of warehouse services because it was "not based upon a common law duty that [defendant] owe[d] independent of the Agreement"); *Rockport Pharmacy, Inc. v. Digital Simplistics, Inc.*, 53 F.3d 195, 199 (8th Cir. 1995) (rejecting application of the professional services exception to a contract for computer maintenance services); *Acol v. Travers Autoplex & RV, Inc.*, 637 S.W.3d 415, 422 (Mo. Ct. App. 2021) ("While Appellants cite several cases to show architects and engineers are held to the professional negligence standard, neither Appellants' briefing nor this Court's research reveal a case establishing the RV repair or similar industry is subject to the heightened professional standard of care."); *All. Glazing Techs., Inc. v. Wheaton & Sprague Eng'g, Inc.*, 2020 WL 6798997, at *2 (E.D. Mo. Nov. 19, 2020) ("Missouri courts do not apply the professional services exception to contractors such as IWR providing construction services."); *Healthcare Servs. Grp., LLC v. Hidden Lake Mgmt., LLC*, 2019 WL 13235563, at *4 (W.D. Mo. Mar. 11, 2019) (economic loss doctrine bars negligence claim arising from a contract to provide housekeeping and dietary services); *Pace v. Wells Fargo Bank, N.A.*, 2012 WL 3705088, at *15 (E.D. Mo. Aug. 27, 2012) ("Under Missouri law, however, the relationship between a lender and a borrower is one of contractual obligation, not of duty.").

Plaintiff does not allege facts showing that Defendants owed Plaintiff a fiduciary duty or that Defendants were subject to a heighted standard of care because they were providing professional services. Finding that this case, involving a business relationship for the processing of credit card payments, fit into either of those exceptions would be an extension of Missouri's law. The Missouri Supreme Court has not fully defined this contour of the economic loss doctrine, but available Missouri case law suggests that the exceptions would not apply here. "It is not the role of a federal court to expand state law in ways not foreshadowed by state precedent." *Salier v. Walmart, Inc.*, 76 F.4th 796, 802 (8th Cir. 2023) (quoting *Ashley Cnty.*, 552 F.3d at 673). Plaintiff's negligence claim is therefore barred by the economic loss doctrine.

### CONCLUSION

Plaintiff has not shown that the Court has personal jurisdiction over Defendant Tiger, and the Third Amended Complaint fails to state a claim for breach of fiduciary duty or negligence against either Defendant. *See* Fed. R. Civ. P. 12(b)(2), (b)(6).

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motions to Dismiss, Docs [23] and [25], are **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Rule 26 Conference and/or Setting on Motions to Dismiss Case, Doc. [47], is **DENIED** as moot.

The Court will issue a separate order of dismissal.

Dated this 14th day of November, 2024.

SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE